# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**ROCK HILL DAIRY, LLC**,

    Plaintiff,

    vs.                                                                                    Case No. 19-CV-612 JAP/GJF

**GENEX COOPERATIVE, INC. and
ALTA GENETICS, INC.**,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On July 23, 2019, Defendants Genex Cooperative, Inc. and Alta Genetics, Inc. filed a MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) (Doc. No. 6) ("Motion") requesting that the Court transfer this case to the United States District Court for the Western District of Wisconsin. On August 19, 2019, Plaintiff Rock Hill Dairy filed a RESPONSE TO MOTION TO TRANSFER VENUE (Doc. No. 13) ("Response") opposing the Motion. Plaintiff argues that Defendants have not proved that the District of New Mexico is sufficiently inconvenient to transfer venue. Having carefully considered the briefing and the controlling law, the Court will grant Defendant's Motion and will transfer this case to the Western District of Wisconsin.

### Background

Plaintiff Rock Hill Dairy, LLC ("Rock Hill Dairy") is a New Mexico-based dairy business that supplies breeding bulls to customers in the dairy and cattle industries. Motion at 3. Defendant Genex Cooperative, Inc. ("Genex") is a Wisconsin-based cattle genetics and herd management service. *Id.* at 2. Defendant Alta Genetics, Inc ("Alta") is a Canadian cattle genetics and herd management service operating in Wisconsin. *Id*. On October 16, 2017, Defendant Genex and Plaintiff entered into a contract for the sale of breeding bull #HO840M003145780899 currently

named "Leaninghouse Titan." *Id.* at 3. The contract provides that Plaintiff would transfer the bull to Defendant Genex in exchange for incremental payments based on the output and quality of the bull's semen. Compl. Ex. A, ¶ 2. The contract also provides for refund of payments and reclamation of the bull if it does not meet the specified output and quality conditions. *Id.*

On December 17, 2017, Defendant Alta and Plaintiff entered into an option contract for the sale of breeding bull #HO840M003145780923, currently named "Leaninghouse AltaLonzo." Motion at 5. The contract provides that if Defendant Alta paid the $34,512 purchase price, Plaintiff would transfer "sole ownership" and "all genetic products" of the bull. Compl. Ex. B, ¶ 2. The contract also contains a bonus payment clause which triggers if Defendant Alta releases the bull for public sale. *Id.* Plaintiff claims that "subsequent to delivery and acceptance of the goods but during the executory period of the contracts, Defendant Genex sold its business to Defendant Alta." Compl. ¶ 7. According to Defendants, both are subsidiaries of URUS Group LP, a limited partnership with its principal place of business in Madison, Wisconsin. Motion at 2.

On May 9, 2019, Plaintiff filed its complaint in the Fifth Judicial District Court, Chaves County, alleging: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of unfair trade practices under NMSA 1978 § 57-12-3; (4) breach of fiduciary duty; (5) debt and money due; (6) violation of the uniform commercial code under NMSA 1978 § 55-2-101; (7) estoppel; and (8) negligent misrepresentation. Compl. ¶¶ 14–54. Plaintiff alleges that "despite Plaintiff's complete performance of its obligations under the contract, Defendants failed to perform its remaining obligations under the contracts." Compl. ¶ 11. On July 02, 2019, Defendants filed a NOTICE OF REMOVAL (Doc. No. 1) alleging diversity jurisdiction under 28 U.S.C. § 1332. On July 23, 2019, Defendants moved to transfer the case to the Western District of Wisconsin.

## Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Whether to transfer a case is within the discretion of the trial court. *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972). In determining whether a venue change is appropriate, courts consider:

> (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and, (9) all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). The party moving to transfer a case under 28 U.S.C. § 1404(a) bears the burden of establishing that the suit should be transferred. *Id.* at 1515. Merely shifting the inconvenience from one side to the other is not a permissible justification for a change of venue. *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992).

"Venue is appropriate in a district in which any defendant resides, if all defendants are residents of the State in which the district is located," or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(1), (2). "[V]enue is not limited to the district with the most substantial events or omissions," rather, more than one district may be an appropriate venue. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165

(10th Cir. 2010). The Tenth Circuit requires a two-part analysis when reviewing appropriate venue under 28 U.S.C. § 1391(b)(2) (venue based on substantial events in the forum). *Id.* at 1166. First, the court must "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims." *Id.* (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)). Second, the court must determine "whether substantial 'events material to those claims occurred' in the forum district." *Id.* Parties may satisfy the substantiality requirement by showing "acts and omissions that have a close nexus to the alleged claims." *Id.* (internal quotes omitted). Once proper venues have been identified, this Court may transfer to an appropriate venue by agreement or in the interests of justice. *See* 28 U.S.C. § 1404(a).

**Discussion**

1. Proper Venue

    a. District of New Mexico

The District of New Mexico is an appropriate venue for this case. Plaintiff raises claims primarily in breach of contract, but also in tort. While the record does not detail with much clarity where the underlying events took place, Plaintiff claims that New Mexico is "where the calves were born and where the contract was signed." RESPONSE TO MOTION TO TRANSFER VENUE (Doc. No. 13, p. 7). The contract formation is material to Plaintiff's claims. The signing of the contract has a "close nexus" to a material event in these claims, namely contract formation. Because a substantial part of material events took place in New Mexico, the District of New Mexico meets the threshold requirement for appropriate venue.

    b. Western District of Wisconsin

The Western District of Wisconsin, where Defendants request transfer, is also appropriate under 28 U.S.C. § 1391(b)(1) and (b)(2). First, "an entity with the capacity to sue and be sued in

4

its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(b)(1). "[I]n a state which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." *Id.* at § 1391(d). Both Defendants admittedly conduct significant business in Wisconsin. Motion at 2. While Defendants did not expound in detail upon the structure of Defendant Alta's corporate activities in the United States, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The Western District of Wisconsin likely has general jurisdiction over Defendant Alta because of its location and admitted activities within Jefferson County, Wisconsin. *See* ALTA GENETICS, *Contact Us*, https://us.altagenetics.com/contact/ (last visited Sept. 27, 2019) (listing N8350 High Road, 53094 Watertown, Wisconsin as the contact address); Motion at 2. At the very least, the Western District of Wisconsin has specific jurisdiction over Defendant Alta for its business activities directed into Wisconsin that gave rise to the contract claims in issue. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980). Accordingly, this Court considers Defendant Alta a resident of Wisconsin for the purposes of venue. Because venue is appropriate where *any* defendant resides (if both defendants are residents of the state), the Western District of Wisconsin is an appropriate venue.
5

Additionally, Defendants allege that they negotiated the contracts in Wisconsin, they keep the bulls in Wisconsin, and each Defendant's performance of its contract took place in Wisconsin. Motion at 6. Contract performance or non-performance is material to Plaintiff's breach of contract and commercial tort claims. Negotiation of the contract and payment (or non-payment) both have a close nexus to the contract formation and performance. Because a substantial part of the material events occurred in Wisconsin, the Western District of Wisconsin is an appropriate venue under 28 U.S.C. § 1391(b)(2).

2. Balance of Transfer Factors

   a. Plaintiff's Choice of Forum

The first factor, plaintiff's choice of forum, weighs against transfer. Unless the balance is strongly in favor of the movant, or the parties contract to a forum, "the plaintiff's choice of forum should rarely be disturbed." *Travelers*, 467 F.2d at 664; *see also Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013) ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."). This Court, however, "accords little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Employers Mut. Cas. Co.*, 618 F.3d at 1168.

Plaintiff selected a home forum near its business, and the Court will give due respect to that decision. While Plaintiff, in its argument, leans heavily on the lack of a forum-selection clause in either contract, this is only one factor in the analysis. And though the record does not show that a significant number of events took place in New Mexico, the Tenth Circuit affords some weight to the location of "the alleged damages or loss . . . for purposes of the venue analysis." *Id*. at 1167. This factor weighs against transfer.

b. Accessibility of Witnesses and Other Sources of Proof

The second factor significantly weighs in favor of transfer. The Tenth Circuit considers the convenience of witnesses one of the most important considerations in deciding a motion under 28 U.S.C. § 1404(a). *Employers Mut. Cas. Co.*, 618 F.3d at 1169. "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary. *Id.* (quoting *Scheidt,* 956 F.2d at 966) (alterations in original). Defendants have identified ten witnesses they believe are critical to this case and where those witnesses are located. Motion at 11–12. Eight of the witnesses reside in Wisconsin, one in New York, and one in New Mexico. *Id*. Defendants also submitted an affidavit from Senior Vice President of Product Development-R&D Robert Welper regarding the materiality of their witnesses. *Id*. at Ex. A ¶ 19. Finally, Defendants indicate that this Court may need to employ compulsory process to compel two non-employee witnesses, Jill Kramer and Neil McDonah, to testify. *Id*. at 13. Defendants argue that these witnesses are outside the subpoena power of the District of New Mexico under FED. R. CIV. P. 45 since they live and work well beyond the 100-mile statutory limitation. ("A subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.").

In response, Plaintiff attacks the materiality of Defendants' witnesses, claiming that their testimony would be redundant and would offer little useful evidence in the contract dispute. *See*

Response at 2–5. After whittling down Defendants' witness list to three material witnesses, Plaintiff asserts that two more New Mexico residents, Abel and Sally Villapondo, would be necessary witnesses. *Id.* at 5. Beyond the three proposed New Mexico witnesses, Plaintiff suggests there could be numerous yet-to-be-identified witnesses based in New Mexico. *Id.*

Defendants have met their burden of demonstrating inconvenience to a majority of the proposed witnesses. While "it is necessary that some factual information relative to the materiality of witness testimony and the considerations mentioned above be supplied to the trial court," *Scheidt*, 956 F.2d at 966, "a certainty or exact specificity of witnesses is not an absolute to the sustenance of movant's burden," *Bussey v. Safeway Stores, Inc.*, 437 F. Supp. 41, 44 (E.D. Okla. 1977). Not every witness may be equally important, but Defendants have provided enough information at this stage for the Court to decide this factor in favor of Defendants. Plaintiff's assertion that additional undisclosed witnesses may be necessary does not provide enough information to detract from this conclusion. Furthermore, the Court acknowledges the potential need to use compulsory process on Defendants' non-employee witnesses who are beyond the Court's subpoena power. Plaintiff also suggests that much of Defendants' desired testimony could be accomplished by video deposition. *Id.* at 7. While this alternative could save time and cut litigation costs, the Tenth Circuit emphasizes the importance of live witness testimony to prevent unfairness. *See Garcia-Martinez v. City and County of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004) ("The preference for a witness's attendance at trial is axiomatic[.]"). Given the number of witnesses that Defendants plan to introduce, and the costs of flying those witnesses from Wisconsin or New York to New Mexico, witness inconvenience weighs in favor of transfer.

c. Cost of Making the Necessary Proof

The cost of making necessary proof does not weigh for or against transfer. Plaintiff asserts that because more witnesses will have to travel to New Mexico, costs will be higher and thus, this factor falls in its favor. This conclusion folds the cost consideration into the convenience factor. District courts in this circuit have rejected this approach before. *See Pehr v. Sunbeam Plastics Corp.*, 874 F. Supp. 317, 321 (D. Kan. 1995) ("The court does not believe that Sunbeam's conclusory allegations that more of the witnesses reside in Indiana, and that more of the documents necessary for trial are contained in Indiana, justify a transfer."). Absent evidence in the record to establish extraordinary costs of litigating in the transferor district, this Court will not favor or disfavor transfer on this ground.

d. Enforceability of a Judgment

Enforceability of the judgment does not favor or disfavor transfer. Federal judgments, regardless of which district entered them, must be recognized by all other federal district courts. *See* 28 U.S.C. § 1963. Both Wisconsin and New Mexico law provide for recognition of federal judgments as well. *See* NMSA 1978, § 39-4A-3; WIS. STAT. ANN. § 806.24. Accordingly, federal or state courts in either district may enforce this judgment.

e. Relative Advantages and Obstacles to a Fair Trial

Opportunity for a fair trial does not favor or disfavor transfer. Neither Plaintiff nor Defendants raise any argument regarding the fairness of a trial in Wisconsin or New Mexico.

f. Difficulties That May Arise from Congested Dockets

Potential for docket congestion weighs slightly in favor of transfer. When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average

9

weighted filings per judge. *Employers Mut. Cas. Co.*, 618 F.3d at 1169. Defendants point to the March 31, 2019 National Judicial Caseload Profile comparing these statistics. Motion at 18 (citing United States District Courts — National Judicial Caseload Profile (March 31, 2019), www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2019.pdf). While the District of New Mexico has fewer cases per judge than Wisconsin, the median time from filing to disposition is much higher in New Mexico. *Id.* (10.7 months in District of New Mexico versus 7.4 months in Western District of Wisconsin). The District of New Mexico has more filings than Western District of Wisconsin, but average weighted filings per judge is lower in New Mexico. Given the closeness of statistics between districts, docket congestion only slightly favors transfer to a faster district.

      g. Conflicts of Law

A conflict of laws analysis weighs in favor of transfer. The Tenth Circuit prefers diversity actions "to be adjudicated by a court sitting in the state that provides the governing substantive law." *Employers Mut. Cas. Co.*, 618 F.3d at 1169. But "[t]his factor receives less weight when the case involves 'relative[ly] simpl[e]' legal issues." *Id.* (quoting *Scheidt,* 956 F.2d at 966). The Tenth Circuit also affords this factor less weight because "federal judges are qualified to apply state law." *Id.*

The complaint raises issues of both contract and tort. New Mexico courts generally apply the law of the place of contracting to contracts disputes. *Presbyterian Healthcare Servs. v. Goldman, Sachs & Co.*, 122 F. Supp. 3d 1157, 1193 (D.N.M. 2015); *see also Ferrell v. Allstate Ins. Co.*, 2008-NMSC-042, ¶ 52, 144 N.M. 405, 188 P.3d 1156, 1172. Parties alternatively may choose the law a court will apply through a contractual choice-of-law provision. *Presbyterian Healthcare Servs.* 122 F. Supp. 3d at 1193 (quoting *Fiser v. Dell Computer Corp.*,

2008-NMSC-046, ¶ 7, 144 N.M. 464, 188 P.3d 1215, 1218). Federal courts in diversity cases will respect New Mexico's policy honoring a contractual choice-of-law provision, unless the parties' choice of law violates New Mexico public policy. *See MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1260 (10th Cir. 2006) ("In cases like this one, where subject matter jurisdiction is based on diversity of citizenship, federal courts must look to the forum state's choice-of-law rules to determine the effect of a contractual choice-of-law clause.").

Both contracts in issue contain choice-of-law provisions. The Genex Contract "shall be governed by, interpreted in accordance with and enforced under the laws of the state of Wisconsin." Compl. Ex. A at 2. The Alta Contract "shall be governed by and construed in accordance with the laws of Canada and the province of Alberta." Compl. Ex. B ¶ 20. The Court will respect the parties' choice of governing law for these contracts. The Western District of Wisconsin is the preferred forum for these claims, because it sits in the state that provides the governing law of one of the contracts.

With respect to Plaintiff's commercial tort claims, Counts III and VIII, New Mexico courts apply the law of the state in which the tortious conduct occurred. *See Torres v. State*, 1995-NMSC-025, ¶ 13, 119 N.M. 609, 613, 894 P.2d 386, 390. Plaintiff asserts that Defendants made false, misleading, and negligent representations that induced Plaintiff into forming, and relying on, the contract. New Mexico district courts have construed these types of claims in tort. *See Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 749 F. Supp. 2d 1235, 1276 (D.N.M. 2010). The record does not make clear where such representations were made, and neither party identifies specific conduct that this Court could use to determine the location of the tort. Regardless, a district court in Wisconsin can easily apply either states' commercial tort laws with a further-developed

factual record. The conflicts of law factor, though not weighing heavily into the overall transfer consideration, favors transfer.

h. Questions of Local Law

The preference for local courts to resolve local issues slightly disfavors transfer. When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale. *Employers Mut. Cas. Co.*, 618 F.3d at 1170. While the contract claims are not local to New Mexico, relief on Plaintiff's commercial tort claims relies on New Mexico law. *See* NMSA 1978 § 57-12-3 (New Mexico Unfair Practices Act); NMSA 1978 § 55-2-101 (New Mexico Uniform Commercial Code). Though Defendants assert that New Mexico and Wisconsin law are similar with respect to their consumer protection and unfair trade practices statutes, the claims still have a local nexus to New Mexico law. This factor thus weighs against transfer.

**Conclusion**

The overall balance of factors weighs in favor of transferring this case to the Western District of Wisconsin. The Western District of Wisconsin should provide a more convenient venue for necessary witnesses. The Court recognizes this will shift some amount of inconvenience to Plaintiff. On the facts presented, however, the Court finds that the overall interests of fairness, convenience, and efficiency will be better served by transfer.

IT IS THEREFORE ORDERED THAT Defendants' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) (Doc. No. 6) is GRANTED. This case will be transferred to the United States District Court for the Western District of Wisconsin.

_____
SENIOR UNITED STATES DISTRICT JUDGE